NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| REGINALD CURTIS,<br><br>             Plaintiff,<br>v.<br><br>CITY OF NEWARK, JOHN DOES (1-10), JANE DOES (1-10), ABC CORPORATIONS (1-10), JOINTLY, SEVERALLY, INDIVIDUALLY,<br><br>             Defendants. | Civil Action No.: 2:19-cv-17499<br><br>OPINION |

**CECCHI, District Judge.**

This matter comes before the Court on Defendant City of Newark's ("Defendant") motion for summary judgment. ECF No. 47. Plaintiff Reginald Curtis ("Plaintiff") filed an opposition (ECF No. 50) to Defendant's motion, and Defendant replied (ECF No. 51). At the Court's request (ECF No. 42), the parties filed supplemental briefing on whether there are genuine issues of material fact as to the existence of a municipal policy or custom in support of Plaintiff's New Jersey Civil Rights Act claim. ECF Nos. 53 ("Pl. Supp. Br."), 54 ("Def. Supp. Br."). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion for summary judgment is hereby granted in part and denied in part.

**I.    BACKGROUND**[1]

This action arises out of Plaintiff's prior employment relationship with the City of

---

[1] Background facts are taken from the evidence and parties' affirmative and responsive statements of material fact, pursuant to Local Civil Rule 56.1. *See* Defendant's Statement of Material Facts, ECF No. 47-2 ("Def. SMF"); Plaintiff's Counterstatement of Material Facts, ECF No. 50 at 1-12 ("Pl. CSMF"); Defendant's Counterstatement of Material Facts, ECF No. 51 at 1-4, ("Def. CSMF").

Newark, where Plaintiff was employed by Defendant's sanitation department from 1988 until his retirement in July 2019. Def. SMF ¶¶ 2, 17; Pl. CSMF ¶¶ 2, 17. Plaintiff's claims are primarily founded upon three categories of Defendant's alleged wrongdoing. First, Plaintiff contends that Defendant wrongfully denied him leave protected by the federal Family and Medical Leave Act ("FMLA") to care for his sick father in January 2018. Second, Plaintiff alleges that Defendant failed to adequately compensate him for his services as Acting Supervisor from 2012 to 2019. And third, Plaintiff argues that Defendant wrongfully denied him a promotion to Permanent Supervisor[2] in 2018.

### a. Request for Leave under the Family and Medical Leave Act

Plaintiff contends that he made requests for leave to care for his father who was suffering from lung cancer, as sanctioned by the FMLA. Pl. CSMF ¶ 3. Plaintiff made the first request on January 4, 2018, and the second request on January 10, 2018. *Id*. Plaintiff made these requests in the form of letters addressed to Valarie Gholston-Key, assistant director of the Newark Department of Public Works. *Id.*; ECF No. 50-2, Exs. 1-2; ECF No. 50-3, Ex. 3 at 7:12-14. In connection with these requests, Plaintiff asserts that he provided Defendant with (i) a letter dated December 22, 2017, from Umar Bowers, M.D. advising that Plaintiff's father had indeed been diagnosed with cancer and "would benefit from family members being able to visit him and support him," ECF No. 50-6, Ex. 13, and (ii) a December 27, 2017, letter from Mouna Abouamara, M.D., advising that Plaintiff's father was being treated at the Gibson Cancer Center in Lumberton, North Carolina, ECF No. 50-6, Ex. 14. *See also* Pl. CSMF ¶ 41. Plaintiff states, absent any specification, that his requests for leave were denied without explanation. Pl. CSMF

---

[2] In addressing Plaintiff's alleged failure to be promoted, the complaint refers to the position he sought as "Supervisor" and "Director," *see* ECF No. 1 at 2, 8, while Plaintiff's briefing refers to the position as "Permanent Supervisor." ECF No. 50 at 30. For clarity and consistency, the Court will use the term "Permanent Supervisor" for this position. *See* ECF No. 50-4 at 96:17-97:3.

¶ 3; ECF No. 50-4, Ex. 4 at 86:10-18.  At her deposition, Ms. Gholston-Key testified that, despite being the individual who received and reviewed employees' FMLA leave applications, she had no recollection of Plaintiff's January 2018 requests for leave or the submission of statements from his father's doctors.  ECF No. 50-3, Ex. 3 at 9:9-14:20.

### b. Compensation as Acting Supervisor

From 1988 to 2012, Plaintiff served in a labor position in the sanitation department, where he worked sanitation truck routes throughout the city.  Def. SMF ¶ 18; Pl. CSMF ¶ 18; ECF No. 50-4 at 10:04-15.  Plaintiff testified that in 2012, he was promoted to the role of "Acting Supervisor" in the sanitation department.  ECF No. 50-4 at 12:12-13:10; Pl. CSMF ¶¶ 4, 19; Def. SMF ¶¶ 4, 19.  Plaintiff testified that, after this promotion, his title and schedule changed but his pay did not.  Pl. CSMF ¶ 19; Def. SMF ¶ 19.  Plaintiff contends that, for the roughly seven years in which he held that position, he "was never compensated for performing the additional duties as Acting Supervisor."  Pl. CSMF ¶ 4.  He asserts that employees holding the supervisory positions were entitled to "the salary differential between the employee's previous position and the Acting Supervisory position."  Pl. CSMF ¶ 5.  Plaintiff contends that such a change in pay grade would typically be memorialized in a written "executive order."  *Id.*  Despite this, Plaintiff points to personnel director Kecia Daniels' testimony that no executive order could be located identifying Plaintiff's pay differential.  *Id.*  Plaintiff also points to testimony from Sanitation Manager Kim Greene that supervisors, who make more than laborers, generally earn an hourly rate of $25 or more.  *Id.*  Plaintiff contends that he was never compensated at this rate.  *Id.*

Defendant notes that Plaintiff was given several pay raises and a separate promotion during his alleged time as Acting Supervisor.  Def. SMF ¶ 27.  For example, Defendant identifies three "Request for Personnel Action forms" from January 2013, November 2017 and July 2018

3

reflecting wage increases during those periods. Def. SMF ¶¶ 27-32. Plaintiff testified that, in January 2013, he received a two percent salary increase, raising his biweekly pay from $1,570.40 to $1,601.00. Def. SMF ¶ 29. Defendant further notes that Plaintiff received a promotion in 2017 from laborer to truck driver, when he had already allegedly been promoted to Acting Supervisor. ECF 50-4 at 43:3-45:12. Plaintiff testified that, in connection with this promotion to truck driver, he received additional increases in both his biweekly pay and yearly salary. Def. SMF ¶¶ 30-31. Finally, Plaintiff testified that, in July 2018, he received another pay increase, raising his yearly salary to $48,692 and his hourly rate to $23.32. Def. SMF ¶ 32.

Plaintiff insists that these wage increases were independent of his role as Acting Supervisor and that he was never provided "a Personnel Action form changing his [t]itle to Acting Supervisor despite performing the duties" for that role. Pl. CSMF ¶ 30. He contends that acting supervisors typically earn a yearly salary of $72,000 and that his yearly salary upon retirement, holding the title of Acting Supervisor, was approximately $55,000. Pl. CSMF ¶¶ 10, 32; ECF No. 50-4 at 15:23-25.

### c. Plaintiff is not Promoted to Permanent Supervisor

Plaintiff asserts that, in early 2016, he ranked number one on the New Jersey Civil Service exam, which would have made him eligible for promotion to Permanent Supervisor. Pl. CSMF ¶ 21; *see also* ECF 50-6, Exhibit 10 at 10 (NJ Civil Service Policy noted that, if a candidate for promotion passes the examination, their "name will be placed on the eligible list for that examination" and candidates "on the eligible list are certified in order of the rank of their examination score."). Despite his position on the eligible list, Plaintiff contends that Defendant promoted other candidates ahead of him in 2018. Pl. CSMF ¶¶ 37, 44. Plaintiff testified that his supervisors advised him that his lack of promotion "must be an oversight" that would be

investigated, but he never received any follow up. ECF No. 50-4 at 49:12-50:10, 107:3-6. Plaintiff also concedes, however that he understood that he was not entitled to a promotion, only that he would be considered for the position. Def. SMF ¶ 37; ECF 47-6, Exhibit B at 58:19-25 to 59:1-11.

## II. LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986); Fed. R. Civ. P. 56(a).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has satisfied this burden, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). To meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Importantly, summary

5

judgment is also appropriate "if the non-moving party provides merely conclusory or speculative evidence." *Beard v. Norfolk S. Ry. Corp.*, No. 18-cv-1801, 2020 WL 2616670, at *2 (M.D. Pa. Mar. 12, 2020). Indeed, "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." *Thimons v. PNC Bank, NA*, 254 F. App'x 896, 899 (3d Cir. 2007); *see also Beard*, 2020 WL 2616670, at *3 ("[O]nly evidence which is admissible at trial may be considered in ruling on a motion for summary judgment.").

### III.   DISCUSSION

Plaintiff's complaint asserts causes of action for (i) violation of the FMLA, 29 U.S.C. §§ 2601, *et seq.*; (ii) breach of contract; (iii) unjust enrichment; (iv) violation of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1, *et seq.*; (v) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.*; and (vi) violation of the New Jersey Constitution. ECF No. 1-2; Def. SMF ¶ 1. Defendant moves for summary judgment on all six counts, arguing that Plaintiff has failed to establish a genuine issue of material fact as to any of his claims. ECF No. 47-1 at 7-17. For the reasons set forth below, Defendant's motion for summary judgment is granted in part and denied in part.

#### a.   Plaintiff's FMLA Claim (Count One)

The FMLA provides an eligible employee with "a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the [parent] . . . of the employee, if such [parent] . . . has a serious health condition."[3] 29 U.S.C. § 2612(a)(1)(C). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA. 29 U.S.C. § 2615(a)(1). Additionally, an employer may not "discharge or in any other

---

[3] An employee is eligible under the FMLA if the employee has been employed "for at least 12 months by the employer" and "for at least 1,250 hours of service . . . during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

6

manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2).

Plaintiff's Count 1 FMLA cause of action is best understood as asserting both a claim for interference of his right to take FMLA-sanctioned leave, and retaliation for pursuing FMLA-sanctioned leave. *See* ECF No. 1-2 at 4-5 (complaint alleging that Defendant "interfered with, restrained and/or denied plaintiff protection afforded under the [FMLA] . . . by not compensating him for his duties as acting Supervisor" and "by denying him promotions" and that Plaintiff suffered "[a]s a proximate cause of defendant's retaliatory conduct"); *see also* ECF No. 51 at 5-6. Accordingly, the Court will address both theories of liability.

### i. FMLA Interference Claim

To state a claim for interference, Plaintiff must show that (1) he was "an eligible employee under the FMLA;" (2) Defendant "was an employer subject to the FMLA's requirements;" (3) Plaintiff was entitled to leave under the FMLA; (4) Plaintiff "gave notice to [Defendant] of his intention to take FMLA leave;" and (5) Plaintiff "was denied benefits to which he was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 192 (3d Cir. 2014) (internal citation omitted). Here, the parties dispute whether Plaintiff provided adequate notice that he required leave to care for his father.[4] Indeed, to properly invoke an employee's FLMA rights, the employee "must provide adequate notice to their employer about their need to take leave." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir. 2012); *see also* 29 U.S.C. § 2612(e)(2)(B). "[T]his is not a formalistic or stringent standard." *Lichtenstein*, 691 F.3d at 303; *see also Sarnowski v, Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007) (finding that a "liberal construction" should be given to the FMLA's notice requirement). In fact, in providing notice, the employee "need not expressly assert rights under

---

[4] Because Defendant's motion does not challenge the remaining factors, the Court need not address them.

7

the FMLA or even mention the FMLA." 29 C.F.R. § 825.303(b). Ultimately, the "critical test" "is not whether the employee gave every necessary detail to determine if the FMLA applies, but 'how the information conveyed to the employer is reasonably interpreted.'" *Lichtenstein*, 691 F.3d at 303 (quoting *Sarnowski*, 510 F.3d at 402). "How the employee's notice is reasonably interpreted is generally a question of fact, not law." *Id.* (collecting cases).

Defendant argues summary judgment is warranted because Plaintiff "failed to produce any correspondence . . . showing that [any] medical documentation was in fact sent to and received by" Defendant to establish notice of Plaintiff's request. ECF No. 51 at 5. The bases for this contention are (i) that Plaintiff failed to provide proof that his leave requests were actually submitted to Defendant, and (ii) Ms. Gholston-Key's testimony that she had no recollection of receiving a leave request from Plaintiff or supporting medical records. *See* ECF No. 50-3, Ex. 3 at 9:9-14:20; ECF No. 51 at 5.

However, Plaintiff points to two letters, dated January 4 and 8, 2018, indicating his father "has lung [c]ancer" and advising that his absence from work was required "to assist [his] aging parents in this time of crisis." ECF No. 50-2, Exs. 1, 2. Both letters were addressed to Ms. Gholston-Key, who testified she was the individual responsible for receiving and reviewing employees' FMLA leave requests. ECF No. 50-3 at 9:9-20. This procedure appears consistent with Ms. Gholston-Key's testimony that requests "would be submitted to the main office and then that information would come to [her] office" for assessment. ECF No. 50-3 at 10:1-3; *see also* 29 C.F.R. § 825.302(d) (noting employees must comply with an employer's "usual and customary notice and procedural requirements for requesting leave," which may require the employee "to contact a specific individual"); *Blake v. Alstom Transportation Inc.*, No. 20-cv-13603, 2022 WL 17250561, at *5 (D.N.J. Nov. 28, 2022) (stating same).

Plaintiff also references notes from two medical providers, indicating that his father "has recently been diagnosed with cancer" and "would benefit from family members being able to visit him and support him." ECF No. 50-6, Exs. 13, 14; *see also Lichtenstein*, 691 F.3d at 306 ("By the very terms of the FMLA regulations, a child's offering comfort and reassurance to a bedridden parent qualifies as 'caring for' the parent." (quoting *Fioto v. Manhattan Golf Enterprises, LLC*, 270 F. Supp. 2d 401, 405 (S.D.N.Y. 2003)).

Accordingly, genuine issues of material fact exist as to whether Plaintiff sent, and Defendant received, Plaintiff's requests for leave and supporting medical records. *See, e.g.*, *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 228-29 (D.N.J. 2015) (denying motion for summary judgment where parties disputed whether plaintiff provided defendant a doctor's note identifying her health condition and need to be absent from work). Therefore, Defendant's motion for summary judgment is denied as to Plaintiff's FMLA interference claim.

### ii. FMLA Retaliation Claim

A retaliation claim under the FMLA requires Plaintiff to show that "(1) []he invoked h[is] right to FMLA-qualifying leave, (2) []he suffered an adverse employment decision, and (3) the adverse action was causally related to h[is] invocation of rights." *Lichtenstein*, 691 F.3d at 302; *see also Ross*, 755 F.3d at 193.

Here, the adverse employment actions alleged by Plaintiff are that he was denied the appropriate pay as Acting Supervisor and was denied a promotion to Permanent Supervisor. ECF No. 1-2 at 2-4. However, Plaintiff contends that he was being denied adequate compensation for his Acting Supervisor responsibilities since he first took the position in April 2012, which was almost six years prior to the alleged invocation of his FMLA rights in January 2018. *See* ECF No. 1-2 at 2-3; Pl. CSMF ¶¶ 3-4; *see also Atchison v. Sears*, 666 F. Supp. 2d 477, 490 (E.D. Pa. 2009)

9

("[C]ourts have found that a plaintiff cannot establish a causal link when the 'decision' to take adverse employment action occurred before plaintiff exercised his or her FMLA rights." (collecting cases)); ECF No. 50 at 27 (noting that Plaintiff "had never taken FMLA [leave] prior to his January [ ] 2018 request"). Further, Plaintiff admitted during his deposition that the denial of his "[p]romotion ha[d] nothing to do with [his] family leave" request. ECF No. 47-1 at 9; *see also* ECF No. 50-4 at 90:15-24 ("[Question:] Okay. So in requesting your leave, that has nothing to do or correlation between that and you not getting the promotion; those two are not connected. Correct? [Answer:] Correct."). And notably, Plaintiff failed to defend his FMLA retaliation claim in his opposition briefing. *See* ECF No. 50 at 23-29 (Plaintiff defending only his FMLA interference claim).

Accordingly, there exists no genuine issue of material fact as to whether any purported adverse employment decision was causally connected to Plaintiff's FMLA leave request. Thus, summary judgment is granted for Defendant as to the FMLA retaliation claim.

### b. Plaintiff's Breach of Contract Claim (Count Two)

The Court will also grant Defendant summary judgment as to Plaintiff's breach of contract claim. At the outset, Plaintiff failed to respond to this claim in opposition to Defendant's summary judgment motion and therefore waives any argument in support of its survival. *See Fischer v. G4S Secure Sols. USA, Inc.*, 614 F. App'x 87, 91 (3d Cir. 2015) ("[B]ecause Fischer did not address the NLRB charges at all in opposing summary judgment, Fischer has abandoned any argument rooted in those unfiled charges."); *Yucis v. Sears Outlet Stores, LLC*, No. 18-cv-15842, 2019 WL 2511536, at *4 & n.4 (D.N.J. June 18, 2019) (collecting cases and finding "Plaintiff abandoned [her] claims because she did not respond to Defendant's arguments on those claims or mention them at all in her brief"), *aff'd as modified*, 813 F. App'x 780 (3d Cir. 2020); ECF No. 51 at 6 n.1.

In any event, to the extent Plaintiff raises a breach of contract claim, it fails as a matter of law.  To sustain a claim for breach of contract, Plaintiff must prove, among other things, "that the parties entered into a contract containing certain terms."  *Martin v. DHL Express (USA), Inc.*, 580 F. Supp. 3d 66, 72 (D.N.J. 2022) (quoting *Woytas v. Greenwood Tree Experts, Inc.*, 237 N.J. 501 (2019)).  The complaint asserts that "Defendant breached plaintiff's contract and deprived h[im] proper payment for h[is] services."  ECF No. 1-2 at 5.  However, in his deposition, Plaintiff testified that no written agreement existed between him and Defendant:

> Q  You don't actually have a contract between yourself and the City, do you?
>
> A  No contract.
>
> Q  So there's no contract that exists between you and the City.  Correct?
>
> A  What do you mean by a contract?
>
> Q  A written agreement between two parties
>
> A  No.

ECF No. 50-4 at 85:18-25; *see also* ECF No. 47-1 at 10-11.  And insofar as Plaintiff contends that some contract was implied between the parties through Defendant's "various writings, representations, [or] communications," ECF No. 1-2 at 5, no evidence has been provided to create a genuine dispute as to the existence of such an implied contract.  *See Omert v. Freundt & Assocs., Inc.*, No. 16-cv-2529, 2018 WL 66961130, at *3 (D.N.J. Dec. 20, 2018) (noting on summary judgment that "Plaintiff must show a valid contract existed between Plaintiff and Defendant"); *Petka v. Samsung Elecs. Am., Inc.*, No. 22-cv-2284, 2023 WL 8527563, at *5 (E.D. Pa. Dec. 8, 2023) (granting summary judgment where "[t]he summary judgment record does not contain a copy of any contract between the Petkas and Samsung, nor is there any other evidence to prove the existence of a contract that was never reduced to writing.").

### c. Plaintiff's Unjust Enrichment Claim (Count Three)

Plaintiff contends that Defendant was unjustly enriched by employing Plaintiff as an Acting Supervisor for nearly seven years without affording him the proper pay. *See* ECF No. 50 at 18-22. Under New Jersey law, "[a]n unjust enrichment claim requires plaintiff to allege (1) at plaintiff's expense (2) defendant received benefit[5] (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. June 19, 2009) (internal quotation marks and citation omitted); *Sharma v. Gupta*, No. 20-cv-3446, 2022 WL 9750544, at *6 (D.N.J. Mar. 31, 2022) (stating same). A successful unjust enrichment claim "requires that plaintiff show that it expected renumeration from the defendant at the time it performed or conferred a benefit on defendant." *Maniscalco*, 627 F. Supp. 2d at 505 (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)).

Defendant argues there is no dispute that Plaintiff received sufficient benefit for his work because Plaintiff's Acting Supervisor position was "interim," he was paid wages during his employment, and he received several raises during the time in question. ECF No. 51 at 6-7. But there is evidence to suggest Plaintiff's position was not "interim" for wage purposes. Defendant's former personnel manager, Kecia Daniels, testified that "[i]f someone is [in an] interim [role] for seven years, then the appropriate classification would be that this person is acting," which is "different than interim." ECF No. 50-5 at 14:23-15:1. Ms. Daniels further testified that an employee in an "acting" role "does [typically] appreciate a salary increase" to "a salary in line with the responsibilities that person is taking on." *Id.* at 15:21-16:1.

---

[5] *See* Greene Dep. at 22:24-23:7 ("[Question:] Is it safe to say that the City benefited from Mr. Curtis being elevated to acting supervisor? [Answer:] If the benefit was accomplishing the work. [Question:] Yes, if the benefit was accomplishing the work. [Answer:] The benefit was accomplishing the work. Yes.").

Although there is no dispute Plaintiff was paid an hourly wage, he contends that his pay was not equal to the value of the services he provided. ECF No. 50 at 20; *see also Mahanor v. Berkley Life Scis.*, No. 21-cv-18981, 2022 WL 2541773, at *12 (D.N.J. July 7, 2022) (allowing unjust enrichment claim to proceed where plaintiff alleged she "provided a benefit beyond her role" and defendant "refused to pay her the full extent of the services" rendered). Plaintiff points to testimony from Ms. Daniels that a change in title would be accompanied by an executive order reflecting the associated pay increase. ECF No. 50-5 at 16:9-17:8 ("So every salary comes with a salary executive order. And if I'm making, say $10,000 and the next position is $12,000, then I would be compensated for the difference in the salary."). However, neither party has produced an executive order reflecting Plaintiff's salary change upon assuming the role of Acting Supervisor. *See* ECF No. 50 at 20. Nor have the parties provided any evidence that Plaintiff was compensated for the difference in wages afforded to acting supervisors and laborers. At a minimum, there remains an issue of material fact as to whether Plaintiff was even entitled to receive a supervisor's salary. *See, e.g.*, Greene Dep. at 15:22-24 ("[Question:] Does the acting supervisor get a pay increase for assuming the duties of a supervisor? [Answer:] That's a possibility that they may.").

Plaintiff also contends that the wage increases identified by Defendant did not remedy the alleged pay deficiency. ECF No. 50 at 20-22. As of 2018, the last pay increase Defendant relies upon, Plaintiff was earning $23.32 per hour and $48,692 annually. ECF No. 47-1 at 12. Yet, Defendant's Department of Public Works manager, Kim Greene, testified that supervisors earn an hourly wage of $25 or more. ECF No. 50-5 at 11:18-23 (stating a supervisor would make in "the mid to high 20s," specifying "[m]id as in 25 up"). Plaintiff also testified that, to his knowledge, acting supervisors earned $72,000 annually. Pl. Dep. at 97:1-3. And although Defendant contends that "[t]hese raises in pay demonstrate that Plaintiff's wages were evaluated and paid

13

commensurate with the work he was completing," the provided records create a question of fact as to what Plaintiff's employment title and responsibilities actually were. For example, a 2013 Request for Personnel Action form identifies Plaintiff's title as "Laborer San[itation] Truck," a 2017 form lists his title as "Truck Driver (CDL)," and a 2018 form identifies Plaintiff as a "Truck Driver Heavy." ECF No. 47-6, Ex. D. However, Ms. Greene testified it was possible that Plaintiff was working as an Acting Supervisor from at least April 2012 to August 2015, Greene Depo at 23:8-25:11, and Plaintiff testified that he was an Acting Supervisor until his retirement in July 2019, Pl. Dep. at 13:7-16, 17:6-9. Notably, Defendant does not appear to dispute that Plaintiff served as Acting Supervisor for roughly seven years. *See, e.g.*, ECF 47.1 at 13; Def. SMF ¶ 35.

In light of the outstanding issues of material fact, a reasonable jury could find that Defendant was unjustly enriched by failing to compensate Plaintiff for the services he provided as Acting Supervisor. Thus, Defendant's motion for summary judgment is denied as to this unjust enrichment claim.

### d. Plaintiff's State Statutory and Constitutional Claims (Counts Four & Five)

Plaintiff asserts claims under the NJCRA, NJLAD, and New Jersey Constitution on grounds that he was wrongfully denied promotion to Permanent Supervisor despite his success on the New Jersey Civil Service Exam. ECF No. 50 at 30-38. Defendant argues that the NJCRA and Constitutional claims must fail because Plaintiff was at no point entitled to a promotion, ECF No. 47-1 at 14, and has failed to allege any municipal custom or policy that deprived citizens of their constitutional rights, ECF No. 54 at 3-4. Defendant also argues that the NJLAD claim must fail because Plaintiff introduces this new theory of liability for the first time in his opposition to Defendant's Motion for Summary Judgement. ECF No. 50 at 35.

### i. NJCRA and Constitutional Claims

The NJCRA dictates in relevant part that "any person who has been deprived of any substantive due process . . . rights . . . secured by the Constitution or laws of the United States, or any substantive rights . . . secured by the Constitution or laws of this State . . . may bring a civil action for damages . . . or other appropriate relief." N.J.S.A. 10:6-2(c). Although Plaintiff asserts a separate cause of action under New Jersey's Constitution, these claims will be assessed together.[6]

To sustain an NJCRA claim, Plaintiff must establish that (i) he was conferred a substantive right by the laws or constitution of New Jersey or the United States; (ii) Defendant deprived him of that right; and (iii) Defendant did so acting under the color of the law. *Trumpson v. Farina*, 218 N.J. 450, 473 (2014); *see also Merrit*, 2023 WL 7220142, at *10. "The legal principles governing the liability of a municipality under the [NJ]CRA and [42 U.S.C. §] 1983 are essentially the same." *Winberry Realty P'ship v. Borough of Rutherford*, 247 N.J. 165, 190 (2021). Thus, a municipality's NJCRA liability must stem from "the existence of a policy or custom" proven by evidence "that the municipality: (1) adopted an official policy that deprived citizens of their constitutional rights; (2) tolerated or adopted an unofficial custom that deprived citizens of their constitutional rights; or (3) failed to affirmatively act to train or service its employees." *Est. of Yearby v. Middlesex Cnty.*, No. A-1974-20, 2022 WL 1714534, at *15 (N.J. App. Div. May 27, 2022), *cert. denied*, 252 N.J. 263 (2022). A municipality does not face NJCRA liability "based on

---

[6] *See, e.g.*, *N.J. Chinese Cmty. Ctr. v. McAleer*, No. 21-cv-08320, 2022 WL 3403297, at *7 n.4 (D.N.J. Aug. 15, 2022) ("Although Plaintiff alleges a violation of constitutional rights to freedom of speech under the New Jersey Constitution and the NJCRA separately in the complaint, I construe the New Jersey State Constitution claims as being brought under the Act."); *Merrit v. Kelly*, No. A-0754-21, 2023 WL 7220142, at *10 (N.J. App. Div. Nov. 2, 2023) ("[W]e note that the NJCRA creates a private cause of action against public defendants for their deprivation of or interference with substantive rights secured by the New Jersey Constitution."). To the extent Plaintiff intended to allege a violation of a procedural right under the New Jersey Constitution, his "expectancy interest" in being considered for promotion "is not an interest in property protected by procedural due process." *In re Crowley*, 473 A.2d 90, 97 (N.J. App. Div. 1984).

15

the act or failure to act of employees 'that do not represent official policy – under the doctrine of respondeat superior.'" *Id.* (quoting *Winberry Realty*, 247 N.J. at 191)).

Here, Plaintiff's claims fail as a matter of law because Plaintiff does not allege a policy, custom, or failure to train employees that would subject Defendant to liability. In sum, Plaintiff alleges that personnel director Ms. Daniels and sanitation director Khalil Thomas "bypassed Plaintiff for appointments when other employees who were not on the eligibility list were promoted to supervisors without any legitimate reasons." ECF No. 50 at 33. Until the submission of the supplemental briefing on whether a relevant municipal policy or custom exists (Pl. Supp. Br.), Plaintiff had not focused on a custom or policy. *See* ECF No. 1-2.

And even after the supplemental briefing, Plaintiff makes only general—and at times contradictory—assertions about the presence of a relevant custom. On one hand, Plaintiff alleges that "the policy and custom of Defendant City of Newark is to pay an employee the difference between that employee's previous salary and the salary of the acting position that the employee assumed." ECF No. 53 at 2; *see also id.* ("the custom is that employees are entitled to differential pay increase"). But on the other hand, Plaintiff claims that the relevant custom is the Defendant adopting the "unofficial custom of *not* paying Plaintiff his earned salary" and "not following civil service promotion laws." *Id.* (emphasis added).

Other than these "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct," Plaintiff has not provided any evidence "to support the existence of any policy, custom, or practice" that prevented Defendant's employees from receiving adequate compensation or prevented employees from being promoted. *Glaesener v. City of Jersey City*, No. 2:19-CV-18089 (CCC), 2022 WL 2955262, at *4 (D.N.J. July 25, 2022) (quoting *Phillips v. Northampton Cnty.*, 687 Fed. App'x 129, 132 (3d Cir. 2017)).

Accordingly, Plaintiff has failed to prove the existence of a municipal policy or custom that could establish municipal liability. Thus, summary judgment is granted for Defendant as to the NJCRA and Constitutional claims.

### ii. The New Jersey Law Against Discrimination (N.J.S.A. 10:5-12(a))

To establish a prima facie case of discriminatory failure to promote, Plaintiff must demonstrate, "(1) that [he] is a member of a class protected by the anti-discrimination law; (2) that [he] was qualified for the position or rank sought; (3) that [he] was denied promotion, reappointment, or tenure; and (4) that others [] with similar or lesser qualifications achieved the rank or position." *Dixon v. Rutgers*, 110 N.J. 442, 443 (1988).

Nowhere in the Complaint does Plaintiff set forth any allegations alluding to discriminatory acts against him based on his religion or creed. And at no point in the present proceedings has Plaintiff attempted to amend his pleadings to include a discrimination claim under the NJLAD. Plaintiff now seeks to introduce for the first time this new claim and theory of liability in his Opposition to Defendant's Motion for Summary Judgment. ECF No. 50 at 44 (arguing that Plaintiff has a "prima facie case of a failure to promote under NJLAD" because Plaintiff is "not Muslim, a Mason [or] a former convict" while those "who were promoted over him were Muslim and the decisionmakers in the Sanitation Department were either Muslim or a Mason."). The "Third Circuit has noted that 'District Courts have broad discretion to disallow the addition of new theories of liability at the eleventh hour." *Brown v. Brown*, No. 05-cv-1130, 2008 WL 650021, at *15 (E.D. Pa. Mar. 10, 2008) (quoting Carr v. Gillis Assoc. Indus., Inc., 227 Fed. Appx. 172, 176 (3d Cir. 2007)); *see also Carr v. Gillis*, 227 Fed. Appx. 172, 176 (3d Cir. 2007) (citing cases where Courts disallowed plaintiffs from raising claims for the first time in their opposition to a summary

17

judgment motion). Accordingly, this Court rejects Plaintiff's belated attempt to assert this discrimination theory of liability.

Even considering Plaintiff's belated discrimination argument, he fails to properly allege that he was in a protected class. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007) ("To establish a *prima facie* case of discrimination, the plaintiff must demonstrate . . . that, *inter alia,* he is a member of a protected class."). Plaintiff argues that "religious factors were considered by Defendant City of Newark in its failure to promote" him. Pl. Opp. at 37. Specifically, Plaintiff alleges that Defendant denied him a promotion because he was "not of Muslim faith, not a criminal, and not a Mason." *Id*. at 36-37. But Plaintiff fails to provide any substantive evidence that suggests he was discriminated against based on his religion or any other protected characteristic. The only evidence Plaintiff attempts to rely on in making this discrimination argument is one interrogatory response (Interrogatory No. 14), wherein he stated, "I was discriminated against because I did not fit in. [I]'m not a Muslim, a Mason or have a Criminal Record." *Id.* at 36. Plaintiff therefore fails to establish that he was in a protected class. Thus, summary judgment is granted for Defendant as to the discrimination claim under NJLAD.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary judgment is granted as to the FMLA retaliation claim (Count 1),[7] the breach of contract claim (Claim 2), and the NJCRA, NJLAD, and constitutional claims (Counts 4 and 5), but denied as to the FMLA interference claim (Count 1) and the unjust enrichment claim (Count 3). An appropriate Order follows.

---

[7] As discussed above, the Count 1 FMLA cause of action is best understood as two separate claims—one FMLA interference claim and one FMLA retaliation claim. Defendant's Motion for Summary Judgment is granted as to the retaliation claim but denied as to the interference claim.

Date: 7/31/2024

*/s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**